UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-4902
_____

THE ST. PAUL INSURANCE COMPANY,

Plaintiff-Appellant,

versus

ESTANISLADO TREJO,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Eastern District of Texas
_____

(November 29, 1994)

Before REAVLEY, GARWOOD and HIGGINBOTHAM, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant St. Paul Insurance Company (St. Paul) appeals the district court's order dismissing its declaratory judgment action. St. Paul contends that the district court erred in dismissing the suit based on both 28 U.S.C. § 1445(c) and federal abstention concerns. We reverse and remand.

**Facts and Proceedings Below**

In March 1990 defendant-appellee Estanislado Trejo (Trejo) was injured on the job in Texas. Consequently, Trejo received an award from the Texas Workers Compensation Commission against his employer and their worker's compensation carrier, St. Paul. Thereafter,

St. Paul filed suit in the state district court in Angelina County, Texas, to set aside the award. The parties then entered into a court-approved settlement agreement (First Settlement) whereby St. Paul agreed to pay Trejo $45,000 plus all past and future medical expenses through October 31, 1995.

Trejo then filed suit in the same Angelina County state court against a third party, Moore Brothers Construction Company (Moore Brothers). Trejo alleged that Moore Brothers' negligence caused his work-related injury. St. Paul intervened in the lawsuit to obtain payment of its subrogation interests. Subsequently, Moore Brothers settled the lawsuit by agreeing to pay $195,000 for Trejo's injuries. St. Paul received $40,000 of the $195,000 in settlement of its subrogation interests and Trejo received the remaining $150,000.

After the settlement Trejo and St. Paul had a dispute about Trejo's medical expenses. The dispute concerned whether, pursuant to Tex. Rev. Civ. Stat. art 8307 6a(c),[1] St. Paul had to pay

_____

[1]    Although this provision was repealed in 1991, it was in effect at the time of Trejo's injuries. Article 8307 § 6a(c) provides:

> "If at the conclusion of a third party action a workmen's compensation beneficiary is entitled to compensation, the net amount recovered by such beneficiary from the third party action shall be applied to reimburse the association for past benefits and medical expenses paid and any amount in excess of past benefits and medical expenses shall be treated as an advance against future benefit payments of compensation to [sic] which the beneficiary is entitled to receive under the Act. When the advance is adequate to cover all future compensation and medical benefits payments as provided by this law, no further payments shall be made by the association but if insufficient, the association shall resume such payments when the

2

medical expenses incurred by Trejo after settlement of the Moore Brothers case.

On November 2, 1992, St. Paul filed this action, based upon diversity of citizenship, against Trejo.  St. Paul's lawsuit sought a declaratory judgment of its rights and responsibilities under both the First Settlement and article 8307 § 6a(c).  On March 4, 1993, Trejo filed suit against St. Paul in the Angelina County state courtSQthe same court in which the two earlier suits had been filedSQalleging St. Paul had breached its duty of good faith and fair dealing and requesting actual and punitive damages.  On March 5, 1993, Trejo filed a motion to dismiss the instant federal lawsuit.

On May 7, 1993, the district court granted Trejo's motion to dismiss.  The court ruled that the case should be dismissed for two reasons.  First, the court held that the suit should be dismissed pursuant to 28 U.S.C. §1445(c) since it arose under the Texas worker's compensation laws.  Second, the court determined that dismissal was appropriate on general federal abstention principles.  St. Paul now appeals.

## Discussion

I.  28 U.S.C. § 1445(c)

28 U.S.C. § 1445(c) provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United

---

advance is exhausted.  The reasonable and necessary medical expenses incurred by the claimant on account of the injury shall be deducted from the advance in the same manner as benefit payments."

3

States."  St. Paul argues that the district court erred in deciding that section 1445(c) authorizes dismissal of its lawsuit.  St. Paul contends that its action is not dismissible under section 1445(c) since it was properly filed in the federal court on the basis of diversity jurisdiction and was never subject to removal from a state court.

Although the district court acknowledged that St. Paul's lawsuit had not been removed, it nevertheless concluded that the federalism concerns underlying section 1445(c) allowed the lawsuit to be dismissed.  The district court reasoned that since St. Paul's lawsuit involved a request for a declaration of rights under a worker's compensation agreement it was a lawsuit "arising under" the Texas worker's compensation laws.  And it concluded that retaining jurisdiction of the case would thus thwart the congressional purpose behind section 1445(c).

The Supreme Court decision in *Horton v. Liberty Mutual Ins. Co.*, 81 S.Ct. 1570, 1572-73 (1961), speaks directly to this question.  In *Horton*, Liberty Mutual filed a federal lawsuit, on the basis of diversity of citizenship, to set aside a worker's compensation award granted by a state administrative board. Thereafter, Horton filed his own action in state court and then moved for dismissal of the federal lawsuit on jurisdictional grounds.  In *Horton*, the Supreme Court held that federal jurisdiction was not barred by the 1958 amendment to Title 28 (now section 1445(c)), which forbade the removal of state worker's compensation cases.  The Court observed that while the purposes of the 1958 amendment, such as limiting federal court congestion and

4

eliminating the burdens that worker's compensation claimants might suffer, militated against the exercise of jurisdiction, the amendment did not specifically prohibit jurisdiction in worker's compensation cases which were originally filed in federal court. *Id*. Further, the Court noted that "Congress used language specifically barring *removal* of such cases from state to federal courts [but] left unchanged the old language which . . . specifically permits civil suits to be filed in federal courts in cases where there are both diversity of citizenship and the prescribed jurisdictional amount." *Id*. at 1573 (emphasis added). The *Horton* Court concluded that "we must take the intent of Congress with regard to the filing of diversity cases in Federal District Courts to be that which its language clearly sets forth." *Id*.

In accordance with *Horton*, even though St. Paul's declaratory judgment action involved a state worker's compensation law,[2] jurisdiction was still proper based on diversity of citizenship. We accordingly hold that the district court erred in dismissing St. Paul's suit on the basis of section 1445(c), or the supposed congressional purposes underlying it, or on the basis of any analogy to section 1445(c) or its purposes. *See also Home Indemnity Company v. Moore*, 499 F.2d 1202, 1204 (8th Cir. 1974) (noting that section 1445(c) "cannot be extended to cases beyond the scope of the plain wording of the statute").

---

[2] We assume, *arguendo* only, that St. Paul's suit is properly characterized as one "arising under" the Texas worker's compensation law.

5

II.  Abstention Concerns

The district court alternatively held that St Paul's suit could also be dismissed under federal abstention principles.  The court concluded that judicial abstention was proper under both the *Burford* and the *Colorado River* abstention doctrines.  St. Paul contends that, in the instant case, neither of these doctrines is applicable.

A.  *Burford* abstention

Pursuant to the *Burford* doctrine,

> "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies:  (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Public Serv. Inc. v. Council of New Orleans*, 109 S. Ct. 2506, 2514 (1989) (citing *Colorado River Water Conservation Dist. v. United States*, 96 S.Ct. 1236, 1244 (1976)).[3]

Although "*Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or

---

[3]   In *Burford v. Sun Oil Company*, 63 S.Ct. 1098 (1943) the Sun Oil Company filed a federal court suit seeking to enjoin an order by the Texas Railroad Commission granting Burford a permit to drill four oil wells.  The sole issue in Sun's lawsuit was whether the Commission had improperly applied its oil and gas regulations, denying Sun due process.  Noting that (1) the lawsuit involved highly technical and complicated regulatory issues which affected the entire state's oil and gas conservation system, *id*. at 1101-1102, and (2) the state had created a comprehensive centralized system for judicial review of the Commission's orders, the Court determined that abstention was proper to protect the state's administrative process from undue federal influence.  *Id*. at 1107.

even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *New Orleans Pub. Serv.*, 109 S.Ct.at 2515.

The concerns governing the *Burford* abstention doctrine are not present in the instant case. St. Paul's lawsuit does not involve a state administrative proceeding. Further, it does not seek to interfere with Texas' worker's compensation system. St. Paul's declaratory judgment action simply seeks interpretation of the First Settlement in light of a Texas statute. Thus, unlike the situations in which *Burford*-type abstention is appropriate, federal jurisdiction in this case would neither affect the state's system of reviewing worker's compensation awards nor be disruptive of the state's policies respecting worker's compensation. Hence, the district court erred in relying on the *Burford* doctrine to dismiss this case.

B. *Colorado River* abstention

Noting that abstention is warranted in order to avoid duplicative litigation and discourage forum shopping, the district court also concluded that it should abstain from jurisdiction in the "interests of wise administration." Abstention based on "wise judicial administration" is commonly recognized as *Colorado River* abstention. This abstention doctrine was developed by the Supreme Court to "govern in situations involving the contemporaneous exercise of concurrent jurisdictions either by federal courts or by state and federal courts." *Colorado River*, 96 S.Ct. at 1246.

In fashioning this abstention doctrine, the Supreme Court emphasized that as a general rule a federal court may not abstain

7

from jurisdiction simply because there are parallel proceedings in a state court. *Id*. However, in spite of the federal court's "virtually unflagging obligation . . . to exercise the jurisdiction given them," the Court determined that there were a few "exceptional circumstances" in which a federal court may abstain based on concurrent litigation. *Id*.

*Colorado River* identified four factors that a district court should consider when determining whether "exceptional circumstances" overcome its general duty to exercise jurisdiction. These factors are: (1) whether another court has assumed jurisdiction over property, (2) whether the federal forum is inconvenient, (3) whether it is desirable to avoid piecemeal litigation, and (4) the order in which jurisdiction was obtained by the concurrent forums. Later, in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 103 S.Ct. 927 (1983), the Supreme Court added two additional factors to the *Colorado River* test. These factors are: (1) whether the federal law provides the rule of decision and (2) whether the state court proceedings are inadequate to protect the federal court plaintiff's rights.[4] *Id*. at 942. In *Moses Cone*, the Court stressed the very limited nature of abstention under the *Colorado River* doctrine and noted that a decision to dismiss did not rest on "a mechanical checklist, but on

---

[4] Unlike the first four factors, these two factors were not added as considerations to weigh *against* retaining jurisdiction. Instead, these two factors provide additional reasons *for* retaining jurisdiction. *Id*. at 942. For example, while the presence of a federal-law issue is an additional reason for retaining federal jurisdiction, the lack of such an issue would not, alone, be a sufficient reason to abstain.

8

a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 937.

The district court's order failed to apply any of the six factors developed under the *Colorado River/Moses Cone* "exceptional circumstances" test. Instead, the district court simply recognized that *Colorado River*, in limited circumstances, allows for abstention where there are concurrent state proceedings, and summarily stated its decision to dismiss.[5] This conclusory statement is not sufficient to satisfy the "exceptional circumstances" analysis required by *Colorado River* and *Moses Cone*.

In considering the factors governing the *Colorado River/Moses Cone* "exceptional circumstances" test, we conclude that abstention on this basis was erroneous. This case does not satisfy any of the first four *Colorado River* factors since it does not involve: (1) a suit for property; (2) a less convenient federal forum; (3) piecemeal litigation, *i.e.* no more than one plaintiff, one defendant, and one issue; or (4) a federal court case being filed after the pending state case. And although under the fifth factor this case does not involve a question of federal law, this alone cannot justify *Colorado River* abstention in a suit which is properly before the federal court on the basis of diversity. As

---

[5] The district court simply held that "in this case . . . -- *i.e.*, one brought in diversity, under the Declaratory Judgment Act, and one in which the insurer's action 'arises under' the Texas worker's compensation scheme so that had it been but *removed* from state court it would have been remanded under 28 U.S.C. § 1445(c) -- abstention is clearly called for by wise judicial administration."

the *Moses Cone* Court observed, only in "rare circumstances [will] the presence of state-law issues . . . weigh in favor of . . . surrender."  In addition, the sixth factor does not outweigh the heavy presumption in favor of retaining jurisdiction.  Even though it appears that a state court proceeding would be adequate to protect St. Paul's rights, this alone, or together with only the fifth factor, is insufficient to overcome a federal court's "virtually unflagging obligation" to exercise jurisdiction in a case that is properly before it.

We hold that this suit does not qualify under the stringent "exceptional circumstances" test of *Colorado River* and *Moses Cone*.  Hence, the district court erred in dismissing the case on the basis of the *Colorado River* abstention doctrine.

III.  Dismissal of a Declaratory Judgment Action

Although the instant case does involve concurrent state and federal litigation, the *Colorado River* doctrine is not the only basis on which the district court could have considered abstention.  Under settled Fifth Circuit law, a declaratory judgment action may be dismissed even though it fails to satisfy the stringent *Colorado River/Moses Cone* "exceptional circumstances" test.  *See Travelers Ins. Co. v. Louisiana Farm Bureau Federation*,  996 F.2d 774, 778 n.12 (5th Cir. 1993) (stating "the factors set out in *Colorado River* . . . are inapplicable in declaratory judgment actions.)"; *see also Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 95 (5th Cir. 1992), *cert. dismissed*, 113 S.Ct. 1836 (1993).[6]

---

[6]    We note that in both *Travelers* and *Granite State* this Court declined to determine whether the dismissal satisfied the

10

Under the Declaratory Judgment Act, a district court has a measure of discretion in deciding whether to entertain the action.[7] Although "the district court's discretion is broad, it is not unfettered." *Travelers*, 996 F.2d at 778. For example, the district court may not dismiss declaratory judgment actions "'on the basis of whim or personal disinclination.'" *Id*. (citation omitted). In addition, "unless the district court addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion." *Id*. Relevant factors the district court must consider in determining whether to dismiss a declaratory judgment, include:

> "(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum

---

*Colorado River* doctrine. *See Travelers*, 996 F.2d at 778 n.1.; *Granite State*, 986 F.2d at 95. In the instant case, we evaluated the district court's dismissal under the *Colorado River* doctrine because the district court rendered its decision, in part, on that basis. As a general matter, a district court's discretionary, nonmerits based dismissal of a declaratory judgment action cannot be successfully challenged *merely* because it does not satisfy *Colorado River* abstention. *See*, *e.g.*, *Mission Ins. Co. v. Puritan Fashion Corp.*, 706 F.2d 599, 601 n.1. (5th Cir. 1983). If such a dismissal is in accordance with the Declaratory Judgment Act, it does not have to satisfy the more stringent *Colorado River* abstention test.

[7] *See* to 28 U.S.C. § 2201, stating in part: "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." (emphasis added).

11

for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy," *id.*,

and, we hold, whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[8]

We observe that although the district court noted its discretionary power to dismiss declaratory judgments, it never addressed the specific factors relevant to a dismissal on that basis. After reviewing the relevant factors, we note that questions such as whether St. Paul filed an anticipatory suit (as Trejo claimed) and whether the court would be construing a judicial decree to which the present litigants were parties entered by the same state court before whom the parallel state litigation between the same parties is pending, are potentially important, unresolved factors. On the present record we cannot say as a matter of law that the district court will be precluded from from dismissing the lawsuit.[9] As a result, we remand to the district court for

---

[8] For example, here the district court should determine whether it makes more sense for the state court that approved the First Settlement to interpret it.
  We also note that St. Paul's suit was filed first and there is no finding that it was anticipatory. Moreover, St. Paul's suit does not challenge, but merely seeks to interpret, the First Settlement and judgment approving it. (Nor do we understand St. Paul to challenge any order or judgment in the Moore Brothers suit). Hence at this stage there is no reason to assume that retention of the federal case would violate *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491 (5th Cir. 1988) (en banc), *cert. denied*, 109 S.Ct. 1932 (1989). *Cf. Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 884 (5th Cir 1993). Nor has Trejo argued that it would.

[9] Whether the state decree is now subject to being reopened

12

reconsideration, and possible further proceedings, in accordance with the Declaratory Judgment Act and above-mentioned relevant factors.[10]

## Conclusion

For the foregoing reasons, the district court's dismissal of this lawsuit is **REVERSED** and the cause is **REMANDED** for further proceedings consistent herewith.

---

might conceivably also be relevant; also, proceedings in the Moore Brothers suit before the same state court might conceivably be relevant; on this record, we simply cannot tell.

[10] We emphasize that the district court should not dismiss this declaratory judgment suit simply because it does not involve a question of federal law. The case is properly before the district court on the basis of diversity, and, as a result, is entitled to the same consideration as cases before the court on some other jurisdictional basis. As there is no policy against diversity jurisdiction, a district court's dismissal of a lawsuit simply because it involves an issue of state lawSQeven an issue of state worker's compensation lawSQwould not be proper.