DRESSER, INC., Constance K. Parsons, D.K. Sharma, Curtis J. Hensley, Richard Fentem and Pete Leboeuf,

v.

Robert S. LOWRY and Lenny L. Williamson.

Robert Lowry and Lenny Williamson,

v.

Dresser, Inc., Richard Fentem and Kurt Hensley.

Nos. CIV.A. 03–1729–A, CIV.A. 03–1941–A.

United States District Court, W.D. Louisiana, Alexandria Division.

April 27, 2004.

Sam Zurik, III, Henry P. Julien, Jr., New Orleans, LA, Matthew W. Ray, Katie J. Colopy, Jones Day et al., Dallas, TX, for Dresser Inc., Constance K. Parsons, D. K. Sharma, Curtis J. Hensley, Richard Fentem, Pete Leboeuf, plaintiffs.

R. Bruce Macmurdo, Connie Marie Aucoin, Baton Rouge, LA, for Robert S. Lowry, Lenny L. Williamson, defendants.

## *RULING*

DRELL, District Judge.

Before the Court are the following Motions: (1) Plaintiffs' Motion for Remand regarding Civil Action No. 03–1941–A filed by Robert Lowry and Lenny Williamson on November 12, 2003 (Document No. 14); (2) Defendants' Motion to Dismiss Based on Lack of Jurisdiction or Alternatively for Abstention filed by Robert Lowry and Lenny Williamson on October 8, 2003 (Document No. 4); and (3) Defendants' Motion to Compel Arbitration and to Dismiss or in the Alternative to Stay Proceedings Pending Arbitration filed by Dresser, Inc., Curtis J. Hensley, and Richard Fentem on October 27, 2003 (Document No. 10). The matters addressed in the Motions have been thoroughly briefed, and the Court finds no need for oral argument.

For the reasons that follow, Plaintiffs' Motion for Remand regarding Civil Action No. 03–1941–A is GRANTED; Defendants' Alternative Motion for Abstention regarding Civil Action No. 03–1729–A is GRANTED; and Defendants' Motion to Compel Arbitration and to Dismiss or in the Alternative to Stay Proceedings Pending Arbitration regarding Civil Action No. 03–1941–A is DENIED.

### Procedural Background

On September 15, 2003 Dresser, Inc. (hereinafter sometimes referred to as "Dresser") and several of its officers and employees filed a Complaint pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, bearing Civil Action No. 03–1729–A on this Court's docket. The Complaint addressed the issue of whether Dresser's Dispute Resolution Program would require Robert Lowry,[1] a former Dresser employee, to submit his claims of alleged age discrimination in employment to binding arbitration.

On October 2, 2003 Robert Lowry filed a Petition in the 9th Judicial District Court, Parish of Rapides, Louisiana against Dresser; Richard Fentem, Chief Executive Officer of the Dresser plant; and Curtis J. Hensley, Dresser's Director of Manufacturing, in which Mr. Lowry alleged Defendants violated Louisiana's statutes prohibiting age discrimination in employment. Mr. Lowry specifically asserted he was not making any claims under potentially applicable federal laws, thus limiting his remedy to state law. The state court suit was removed on October 20, 2003 on the basis of diversity jurisdiction, and the matter was assigned Civil Action Number 03–1941–A. In the Notice of Removal, Defendants argued that Mr. Fentem and Mr. Hensley, Louisiana citizens, were fraudulently joined for the purpose of defeating this Court's jurisdiction.

Considering the common issues of fact and law, the actions were consolidated by Order dated October 31, 2003.

### Motion to Remand

Because resolution of Mr. Lowry's Motion to Remand will necessarily impact the remaining Motions, the Court will address the fraudulent joinder issues first.

The parties do not dispute Dresser is a Delaware corporation with its principal place of business in Texas. Likewise, the litigants agree Mr. Lowry, Mr. Fentem, and Mr. Hensley are residents and citizens of the State of Louisiana. Therefore, if Mr. Lowry is able to establish a cause of action in state court against one or both of the Louisiana Defendants, their involvement in this litigation would serve to defeat federal diversity jurisdiction.

The pivotal issue is whether a cause of action against individuals (Mr. Fentem and/or Mr. Hensley) for aiding and abetting a corporate employer (Dresser) in its commission of discriminatory acts survived certain 1997 amendments to Louisiana's employment discrimination laws.

Louisiana first ventured into the area of employment discrimination legislation in 1978 when it enacted La. R.S. 23:971–975, titled "Age Discrimination in Employment." With the passage of La. R.S. 23:1006 in 1983, the legislature added prohibitions for employment discrimination based upon race, religion, color, sex, disability, or national origin. In 1988 the Louisiana Commission on Human Rights was created and empowered through La. R.S. 51:2231–2265 to enforce laws prohibiting discrimination in employment and public accommodations on the basis of the

---

**1.** All claims by and against Lenny Williamson, another former Dresser employee asserting age discrimination in employment, were dismissed by Order dated April 6, 2004. (Document No. 32.)

above-mentioned characteristics. Unfortunately, the 1988 legislature "neglected to revise and/or repeal the other statutory provisions ... [and] created mass confusion ... in determining which statutes applied to a particular situation and resolving the conflicts between the various provisions." Gerald J. "Jerry" Huffman, Jr., *The New Louisiana Employment Statutes: What Hath the Legislature Wrought,* 58 La. L.Rev. 1033, 1034 (1998).

In an effort to correct the deficiencies in the prior statutes, the "Louisiana Employment Discrimination Law," 1997 La. Acts. No. 1409, was passed with an effective date of August 1, 1997. This "massive" legislation, "purport[ed] to eliminate confusion by wiping out *nearly all* previous employment discrimination statutes in place of new Chapter 3–A of Title 23 . . . ." Huffman, *supra,* at 1034 (emphasis added). The problem presently confronting the Court centers around the legislature's failure to eliminate *all* the previous employment discrimination statutes, and the concomitant consequence of trying to read the legislative mind for signs of implied repeal of those provisions.

Prior to the 1997 changes, La. R.S. 51:971–975 prohibited an "employer" (defined generally as a person, or his agent, engaged in an industry affecting commerce who employed twenty or more workers), an employment agency, or a labor organization from discriminating against an individual in an employment context as a result of that individual's age. The provisions of Title 51 did not specifically provide a cause of action for conspiracy to aid and abet the exercise of such employment discrimination.

At the same time, La. R.S. 51:2242–2245, a portion of the law concerning the powers and responsibilities of the Louisiana Commission on Human Rights, prohibited an "employer" (defined generally as a person, or his agent, engaged in an industry affecting commerce who had fifteen or more employees), an employment agency, or a labor organization from discriminating against an individual in an employment context as a result of that individual's race, color, religion, sex, age, disability, or national origin.

1997 La. Acts. No. 1409 repealed La. R.S. 23:971–975 as well as La. R.S. 51:2242–2245 and replaced those articles with La. R.S. 23:301–354. Section 312 of the new "Louisiana Employment Discrimination Law" prohibits an employer (defined generally as a person with twenty or more employees who receives services from an employee and, in return, gives compensation of any kind to an employee), an employment agency, or a labor organization, from discriminating against an individual in an employment context on the basis of that individual's age.[2] The provisions of Title 23 do not specifically provide a cause of action for conspiracy to aid or abet the exercise of such employment discrimination.

The pre–1997 version of La. R.S. 51:2256 is identical to the current wording of that statute, which provides, in pertinent part: "It shall be an unlawful practice for a person or for two or more persons to conspire ... (2)[t]o aid, abet, incite, compel, or coerce a person to engage in any of the acts or practices declared unlawful by this Chapter."

Both sides in the case currently at issue have pointed the Court to varying unpublished jurisprudential observations regarding the effect of the 1997 amendments.[3]

---

**2.** Employment discrimination arising from other prohibited considerations, such as race and religion, is prohibited in subsequent sections of Chapter 3–A, Title 23.

**3.** This entire matter of the citation of unpub-

Mr. Lowry refers to Magistrate Judge Shushan's conclusion in *Miller v. American General Financial Corporation*, 2002 WL 2022536 (E.D.La.2002) that La. R.S. 51:2256 continues to apply in employment discrimination cases. One of the bases for the Magistrate Judge's decision included the fact that the 1997 changes define an "unlawful practice," in part, as "a discriminatory practice in connection with employment." La. R.S. 51:2232. The undersigned also notes that the 1997 amendments define "a discriminatory practice in connection with employment" as "an employment practice prohibited by R.S. 23:312 ...." *Id.*

In opposition to the Motion to Remand, Dresser and its named employees embrace the reasoning of Magistrate Judge Wilkinson in *Trahan v. Lowe's Inc.*, 2002 WL 1560272 (E.D.La.2002) that the legislature's stated purposes in enacting the 1997 amendments included "consolidating the State's employment discrimination laws into one chapter [*i.e.*, La. R.S. 23:301 and following] and removing references to employment discrimination in other sections of the law." Therefore, the provisions of Title 51 no longer apply to employment discrimination based on age. Rather, the Magistrate Judge concluded that (post-amendment) Title 51 only makes unlawful four specific discriminatory practices "(1) in public accommodations and in advertisements of public accommodations ...; (2) against breastfeeding mothers ...; (3) by financial institutions in providing financial services ...; and (4) in credit transactions ...." *Id.* Because La. R.S. 51:2256 prohibits conspiracies related to practices "declared unlawful by this Chapter,"Magistrate Judge Wilkinson

determined that, effective August 1, 1997, a cause of action could only be stated under § 2256 for a conspiracy related to one of those four specified discriminatory practices. The undersigned notes that the Magistrate Judge's conclusions regarding § 2256 are *dicta*, because the Louisiana "whistle-blower" statute, which was also added in 1997, did provide a cause of action for redress of the retaliatory conduct alleged by plaintiff in *Trahan.*

Dresser also references two other unpublished decisions, *Johnson v. Integrated Health Services, Inc.* 2002 WL 31246762 (E.D.La.2002) and *Miller v. Blanchard,* 2002 WL 31819122 (E.D.La.2002), in which Judge Vance agreed with the reasoning in *Trahan* and determined liability under La. R.S. 51:2256 is limited to retaliation against practices made unlawful under the Louisiana Human Rights Act and does not extend to provisions repealed from that Act and now incorporated in Title 23.

The problem in the case presently under consideration is that both Mr. Lowry and Dresser/Dresser's employees are espousing potentially valid interpretations of the current Louisiana law. As Mr. Huffman outlined in his commentary on the 1997 revisions,

> To determine the exact construction the legislature intended to give to the retained Section 51:2256 is a formidable task.... From the ... language [of the statute] it is reasonable to assume that a plaintiff claiming "retaliation" [or conspiracy to aid/abet discrimination] must be able to point to a right protected by that "chapter," i.e. revised Chapter 38 of Title 51. However, the revised Chapter

---

lished opinions of District Courts is treacherous territory, to say the least. We consider the issues here only to observe the obvious confusion that reigns in this area of the law. For interesting discussion of unpublished opinions, *see Williams v. Dallas Area Rapid*

*Transit,* 256 F.3d 260 (5th Cir.2001) and Judge Jerry E. Smith, *Fifth Circuit Survey, June 2001–May 2002: Forward: Taking Advantage of Technological Innovation in Appellate Litigation,* 34 Tex. Tech L.Rev. 425.

38 does not contain any prohibitions against employment discrimination. Thus, the still existing provisions of Sections 51:2256 and 51:2264 (authorizing civil actions) would appear to have no application to the employment setting-except perhaps to prohibit retaliation [or conspiracy to aid/abet discrimination] against those who file a charge with the Louisiana Commission on Human Rights.

A counter-argument could be made that the legislature, by assigning enforcement powers to the Commission over various types of employment discrimination in Section 51:2231(C), meant for those rights in Section 23:301 et seq. to be incorporated by reference into Chapter 38–such that the conspiracy to retaliate and/or discriminate provisions in Section 51:2256 would still have some teeth.

Huffman, *supra*, at 1050 n. 125.

Although Mr. Huffman postulates the latter interpretation of the statute is "improbable," given his reading of the remainder of the law, he is unable to reach a definitive conclusion regarding the intent of the Louisiana legislature.[4] Rather, he urges, "[h]opefully [sic], this omission will be cured in the next legislative session . . . ." Huffman, *supra* at 1051.

Mr. Huffman's hint to the legislature was made in 1998. In 2004, the wording of the statutes remains unchanged, and jurists continue to interpret the unclear language in different ways. Indeed, even Judge Vance, who found § 2256 was not applicable in the employment discrimination context in 2002, denied a Motion to Dismiss in 2001 on the grounds that the Plaintiff in an employment gender discrimination action had sufficiently stated a claim for conspiracy under La. R.S. 51:2256. *Seal v. Gateway Companies,*

*Inc.*, 2001 WL 1018362, 2001 U.S. Dist. LEXIS 14426 (E.D.La.2001). Conversely, in another unpublished opinion, Judge McNamara found "[a]s a matter of law," that § 2256 "does not apply to unlawful employment discrimination." *Anderson v. Guste Homes,* 2004 WL 224567, 2004 U.S. Dist. LEXIS 1491 (E.D.La.2004). Judge Fallon reached the same conclusion in *Smith v. Parish of Washington,* 318 F.Supp.2d 366 (E.D.La.2004), but he acknowledged the confusion in the area, and he provided language potentially distinguishing the *Smith* case from other situations not dealing specifically with the anti-retaliation provisions of § 2256.

Another ambiguity in the current law is whether the legislature intended Title 51 to continue to apply to employment discrimination cases so that Louisiana would remain a "deferral" state under federal law and under the regulations of the Equal Employment Opportunity Commission. *See Smith,* 318 F.Supp.2d 366; Huffman, *supra* at 1048–49; and Katherine Tonnas, *The "Nuts & Bolts": The Louisiana Commission on Human Rights: Committed to Protecting Citizens from Discriminatory Practices,* 51 La. Bar Jnl. 266 (2003).

 The jurisprudence regarding consideration of a Motion to Remand is clear that "[a]ny contested issues of fact and any ambiguities of state law must be resolved" in favor of the non-removing party. *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003). Additionally, "[t]he burden of persuasion on those who claim fraudulent joinder is a heavy one . . . ." *Id.* If, after applying these concepts, there is "any possibility of recovery [under state law] against the party whose joinder is questioned," *Id.* at 648, federal diversity jurisdiction will not attach.

---

4. The rules of statutory construction applied by Louisiana courts do not favor implied re-

peals. *See Roby v. Board of Trustees,* 94–0671 (La.App. 4th Cir.1/31/95), 650 So.2d 811, 813.

In light of the ambiguities discussed above, this Court is unable to say Mr. Lowry has *no possibility* of recovery against Mr. Fentem and/or Mr. Hensley under Louisiana law. Thus, Defendants have not satisfied their "heavy" burden of proof that the Louisiana residents have been fraudulently joined. Accordingly, the suit brought by Mr. Lowry, bearing Civil Action Number 03–1941, should be remanded.

■ Mr. Lowry also seeks an award of costs and actual expenses, including attorney's fees, incurred as a result of the removal. The language of 28 U.S.C. § 1447(c) authorizing an award for such costs and expenses is discretionary. In exercising this discretion, a district court is to consider whether the removing party had "objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir.2000).

In light of the lack of clarity in Louisiana law regarding the liability of individuals under the circumstances presented in this case, the Court is unable to say the removal was objectively unreasonable. Therefore, an award of costs and attorney's fees is not appropriate.

### *Motion To Dismiss*

In his Motion to Dismiss Based on Lack of Jurisdiction or Alternatively for Abstention, Mr. Lowry asks this Court either to dismiss the declaratory judgment action filed by Dresser and its employees for lack of jurisdiction or to abstain from taking the matter to judgment in light of the state court action Mr. Lowry filed involving the same issues and some of the same parties. The Declaratory Judgment Plaintiffs, however, argue this Court should issue the requested Declaratory Judgment, because only two of the potentially liable Dresser employees have been named in Mr. Lowry's state court suit, the Declaratory Judg-

ment Plaintiffs have not abused or manipulated the justice system, and factors of inconvenience to the parties and judicial economy would be well-served if this Court were to resolve the issues raised in the declaratory judgment action.

The Declaratory Judgment Act provides that "any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration...." 28 U.S.C. § 2201. In *Wilton v. Seven Falls Company*, 515 U.S. 277, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995), the Supreme Court explained,

"the Declaratory Judgment Act [is] ... understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of the litigants.... We have repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' (Citation omitted.)"

■ The analysis regarding whether to decide or dismiss a Declaratory Judgment action requires a federal district court to determine: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin–Williams Company v. Holmes County*, 343 F.3d 383, 387 (5th Cir.2003).

Regarding justiciability, a declaratory judgment action is ripe for adjudication if it addresses an actual controversy. 28 U.S.C. § 2201(a). "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests.' (Citations omitted.)" *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir.2000). In the case currently before the Court, Mr. Lowry's state court suit, which was filed less

than one month after the declaratory judgment action, affirms the nature of an already-existing actual controversy.

■ Once the justiciability decision is made, the Court must next determine whether it has the authority to grant declaratory relief.

> [A] district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in federal court; and (3) the district court is prohibited from enjoining the state proceedings under section 2283."[5] *Sherwin–Williams,* 343 F.3d at 388.

Mr. Lowry brought his state court suit after the declaratory judgment action was filed. Therefore, the authority of this Court is not in question.

■ The third factor a court must evaluate when regarding possible dismissal of a declaratory action is how to exercise its discretion to decide or dismiss the case. The Fifth Circuit has identified the following seven nonexclusive factors to consider when making this determination:

(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin–Williams,* 343 F.3d at 388, *citing St. Paul Ins. Co. v. Trejo,* 39 F.3d 585 (5th Cir.1994).

■ These factors address three issues essential to deciding whether to exercise jurisdiction over a declaratory judgment action or to abstain: the proper allocation of decision-making between state and federal courts; fairness; and efficiency. The first factor is relevant to the issues of federalism and efficiency.[6]

> [I]f [a] federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit.

*Id.* at 390–91.

■ Following a detailed exploration of a split in the circuits concerning whether

---

**5.** The Anti–Injunction Act, 28 U.S.C. § 2283, forbids a federal court from granting an injunction to stay state court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

**6.** The seventh *Trejo* factor, possible construction by the federal court of a state judicial

decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending, also addresses the issues of federalism and efficiency. There is nothing in the record to suggest this factor is applicable in the current case. Thus, the consideration does not aid this Court in making its decision.

the lack of a pending state court suit limited a district court's discretion to decide or dismiss a declaratory judgment action, the Fifth Circuit decided to join the Fourth and the Ninth Circuits and concluded:

[A] *per se* rule requiring a district court to hear a declaratory judgment action is inconsistent with the discretionary ... standard [established by the Supreme Court].... The lack of a pending parallel state proceeding should not automatically require a district court to decide a declaratory judgment action, just as the presence of a related state proceeding does not automatically require a district court to dismiss a federal declaratory judgment action.

*Id.* at 394.

Judge Rosenthal, writing for the panel, further explained:

Even without a *per se* rule requiring a district court to hear a declaratory judgment action where there is no pending state litigation, the presence or absence of a pending parallel state proceeding is an important factor.

*Id.*

■ With the execution of the Judgment granting Mr. Lowry's Motion to Remand, there will be a pending state court action involving the same issues and some of the same parties. Declaratory Judgment Plaintiffs argue that even with a pending state court suit, this Court should exercise its jurisdiction over the declaratory judgment action, because the pending state court proceeding would only litigate the rights of the two Dresser employees Mr. Lowry has named in his suit. Therefore, as to the three Dresser employees not yet sued by Mr. Lowry but included in the declaratory judgment action, Plaintiffs contend no state court suit is "pending."

The Declaratory Judgment Plaintiffs seek a decision that Dresser's Dispute Resolution Program is applicable to Mr. Lowry's claims of employment discrimina-

tion. In his state court Petition, Mr. Lowry has asked for a judicial determination regarding his employment discrimination claims. There is nothing in the record to suggest that the applicability or non-applicability of the Dispute Resolution Program will be determined by which Dresser employees are named as Defendants in the state court litigation. While a state court judgment would not directly impact individual employees who are not parties to that suit, it would bind Dresser, their employer, under whom they allegedly committed the wrongs asserted by Mr. Lowry. The failure of Mr. Lowry to join the three additional Declaratory Judgment Plaintiffs does not hinder the state court's ability to determine whether the Dispute Resolution Program is applicable to Mr. Lowry.

As the Fifth Circuit has explained, "[f]undamentally, the district court should determine whether the state action provides an adequate vehicle for adjudicating the claims of the parties and whether the federal action serves some purpose beyond mere duplication of effort." *PPG Industries, Inc. v. Continental Oil Co.*, 478 F.2d 674, 682 (5th Cir.1973), *referencing Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942). In this case, the state court action provides an adequate opportunity for adjudication of the claims between Mr. Lowry, Dresser, and Dresser's employees. More importantly, the state court forum provides the opportunity for the Louisiana system to work through the confusing application of its discrimination laws. Therefore, the first *Trejo* factor weighs in favor of abstention.

Although the presence or absence of a federal question and/or the novelty of any state law issues are not specifically listed in the nonexclusive *Trejo* factors, the *Sherwin–Williams* court found that these matters are issues properly considered when

evaluating whether to dismiss a declaratory relief action. As Declaratory Judgment Plaintiffs admit, the federal question is a strictly hypothetical theory. Indeed, given Mr. Lowry's failure to file a timely claim with the Equal Employment Opportunity Commission, he might be precluded from pursuing any federal claim at this point. As to the novelty of the state law issues, the ambiguities in the Louisiana statutes that prompt remand in this case, also suggest state court adjudication would be more appropriate.

The next three *Trejo* factors address the fairness concerns related to forum selection. Although the Fifth Circuit has not traditionally favored anticipatory declaratory judgment suits based on forum shopping, the *Sherwin–Williams* court explained,

> A proper purpose of [the Declaratory Judgment Act] is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires. [Citation omitted.] The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal of the declaratory judgment action by the federal court.

*Sherwin–Williams*, 343 F.3d at 397.

Judge Rosenthal did explain, however, that certain improper reasons motivating an anticipatory declaratory judgment filing (such as choosing one forum over another in an attempt to utilize more favorable law, or bringing a declaratory judgment action when the declaratory judgment defendants have been restricted from filing state court actions) would weigh in favor of dismissal of the declaratory judgment action. *See Id.*, at 397–99.

There is nothing in the record to suggest Dresser or any of the other Declaratory Judgment Plaintiffs is attempting to engage in the type of subterfuge denounced by the Fifth Circuit. Therefore, the fairness factors enumerated by *Trejo* are neutral when applied to the instant matter.

The remaining *Trejo* factors concerning the convenience of the forum for parties and witnesses and judicial economy bear on the element of efficiency. Both the state court in which Mr. Lowry filed his suit and this Court sit within two blocks of each other on the same street in Alexandria, Louisiana. Therefore, both forums are equally convenient or inconvenient, as the case may be. Retaining the case in federal court, however, would not necessarily serve the interests of judicial economy. As discussed above in relation to the Motion to Remand, significant ambiguities exist in the Louisiana law applicable to this case. While this Court certainly has the power to impose its judgment on those issues, resolution by a state court would appear preferable. This decision is bolstered by the complete absence of any substantive federal legal issues in the suit currently before the Court.

Under these circumstances, the Court will decline to exercise its jurisdiction over the declaratory judgment action.

### *Motion to Compel Arbitration and to Dismiss or in the Alternative to Stay Proceedings Pending Arbitration*

These Motions are made moot by the Court's resolution of the Motions addressed above.

### *Conclusion*

For the reasons set forth above, the Motion to Remand is GRANTED, and the suit filed by Robert Lowry bearing Civil Action Number 03–1941–A on this Court's docket is REMANDED to the 9th Judicial District Court, Rapides Parish, Louisiana.

The Motion to Dismiss Based on Lack of Jurisdiction is DENIED, the Alternative

Motion for Abstention is GRANTED, and the declaratory judgment suit bearing Civil Action Number 03–1729–A on this Court's docket is DISMISSED WITHOUT PREJUDICE.

The Motion to Compel Arbitration and to Dismiss or in the Alternative to Stay Proceedings Pending Arbitration is DENIED AS MOOT.