# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50079

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2014

Lyle W. Cayce
Clerk

BRYAN GONZALEZ,

Plaintiff–Appellant,

v.

VICTOR M. MANJARREZ, JR.,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:11-CV-29

Before STEWART, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

PER CURIAM:*

This appeal arises from the district court's dismissal of Plaintiff–Appellant Bryan Gonzalez's suit against Defendant–Appellee Victor M. Manjarrez, Jr., pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the U.S. Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, alleging violations of his First Amendment right to freedom of speech. The district court found that it lacked jurisdiction to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

provide a *Bivens* remedy under *Broadway v. Block*, 694 F.2d 979 (5th Cir. 1982), and other precedent. It also declined to exercise jurisdiction over Plaintiff–Appellant's request for a declaratory judgment. For the reasons herein, we AFFIRM.

## I.

Gonzalez was employed as a Border Patrol Agent from October 15, 2007 to September 16, 2009. During that time, Manjarrez was the Chief Patrol Agent of the sector in which Gonzalez worked. When the events giving rise to this suit took place, Gonzalez had not yet completed his two-year probationary status. His probationary status would have expired in October 2009.

On April 13, 2009, Gonzalez and fellow Border Patrol Agent Shawn Montoya were patrolling the border between the United States and Mexico. During a break, Gonzalez and Montoya pulled their vehicles alongside each other and began talking. The topic of drug-related violence in Mexico came up in their discussion. Gonzalez remarked that legalization of drugs would end the drug war and related violence in Mexico. He also stated that the drug problems in America were due to American demand for drugs supplied by Mexico. He mentioned an organization made up of former law enforcement officers who oppose the drug war, called "Law Enforcement Against Prohibition," along with the organization's website. Gonzalez expressed his opinion that Mexicans came to the United States because of the lack of jobs in Mexico. He noted that he considered himself Mexican because, although he was born in the United States and a citizen of the United States, he had had dual citizenship with Mexico until he was eighteen years old.

Montoya mentioned Gonzalez's remarks to another Border Patrol Agent, Richard Carrasquillo. On April 27, 2009, Carrasquillo reported Gonzalez's remarks to the Joint Intake Command in Washington, D.C. Soon thereafter,

No. 13-50079

an Internal Affairs Investigation was commenced, ultimately resulting in Gonzalez's termination by Manjarrez on September 16, 2009. The termination letter stated, in part, that Gonzalez held "personal views that were contrary to the core characteristics of Border Patrol Agents, which are patriotism, dedication, and esprit de corps."

Following his termination, Gonzalez filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that he was unlawfully terminated on account of his race or national origin. On August 31, 2010, an EEOC administrative judge rejected that claim on the merits, holding that the Border Patrol had articulated a legitimate, non-discriminatory reason for its action.[1] Gonzalez did not seek further review of the EEOC's decision. Nor did he file a complaint with the Merit Systems Protection Board's ("MSPB") Office of Special Counsel ("OSC") at that time. Instead, on January 20, 2011, Gonzalez filed suit against Manjarrez, pursuant to *Bivens* and the Declaratory Judgment Act alleging violations of his First Amendment right to freedom of speech. Gonzalez later filed an unopposed motion to stay the litigation to permit him time to pursue a complaint with OSC.[2]

The district court dismissed the case for lack of subject matter jurisdiction and denied all other pending motions as moot, including the unopposed motion to stay proceedings. This appeal ensued.

**II.**

---

[1] The administrative judge wrote that the "Agency had reason to believe that [Gonzalez], a probationary employee, might not 'uphold and enforce the laws of the United States of America at all times.'"

[2] Although the district court denied the motion to stay, Gonzalez did indeed file a complaint with the OSC. The OSC made a preliminary decision to close the matter, to which Gonzalez responded that closure would be premature and argued that the matter should proceed to the MSPB. The OSC was unconvinced and made a final determination to close the matter on September 30, 2013.

We review de novo a district court's dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.,* 704 F.3d 413, 421 (5th Cir. 2013).

The Civil Service Reform Act ("CSRA") was enacted to provide a comprehensive scheme for federal employees to challenge adverse personnel decisions. *See United States v. Fausto*, 484 U.S. 439, 455 (1988). It replaced an "outdated patchwork of statutes and rules that afforded employees the right to challenge employing actions in district courts across the country." *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2135 (2012) (internal quotation marks and citation omitted). The availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue. Certain employees may seek review of certain types of adverse personnel actions before the Merit Systems Protection Board ("MSPB"), whose decisions may be appealed to the United States Court of Appeals for the Federal Circuit. Employees must meet "requirements regarding probationary periods and years of service" in order to be entitled to review.[4] *Elgin*, 132 S. Ct. at 2130.

As we noted above, Gonzalez was in his probationary period when he was terminated. He correctly points out that, as a consequence of his probationary status and the OSC's closure of his matter, the district court's dismissal of his claims resulted in the preclusion of any judicial review of his First Amendment claim under the CSRA. He claims that this lack of judicial review constitutes

---

[3] Defendant–Appellee brought a motion to dismiss under Rule 12(b)(6), but the district court also assessed the validity of its subject matter jurisdiction under Rule 12(b)(1).

[4] Probationary employees like Gonzalez may not directly seek MSPB review of adverse employment actions. *See* 5 U.S.C. § 7511. Instead, they have the right to "seek corrective action" from the OSC. 5 U.S.C. § 1214.

just the kind of "serious constitutional question" that the Supreme Court in *Elgin* said "would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* at 2132 (internal quotation marks and citation omitted). As such, he argues that preclusion of his claim requires a "heightened showing" of "clear" Congressional intent under *Elgin*. *Id.* (internal quotation marks and citation omitted). His arguments are unavailing.

*Bivens* actions by federal employees against their employers for First Amendment violations have been expressly precluded by this court. *See Grisham v. United States*, 103 F.3d 24, 26 (5th Cir. 1997) ("[I]t is clearly established in the Fifth Circuit that . . . *Bivens* claims under the First Amendment by employees regarding employment actions covered by the CSRA are precluded."); *see also Bush v. Lucas*, 462 U.S. 367, 390 (1983) (reasoning that "Congress is in a better position to decide whether or not the public interest would be served by creating" a damages remedy for aggrieved federal employees' First Amendment rights); *Bell v. Laborde*, 204 F. App'x 344, 345 (5th Cir. 2006) (per curiam) (unpublished); *Rollins v. Marsh*, 937 F.2d 134, 138–39 (5th Cir. 1991); *Broadway*, 694 F.2d at 985–86. We have repeatedly held that the CSRA provides the exclusive remedy for federal employees seeking damages for alleged constitutional violations arising out of the employment relationship. *See, e.g.*, *Guitart v. United States*, 3 F.3d 439, *1–2 (5th Cir. 1993) (per curiam) (unpublished); *Rollins*, 937 F.2d at 138–39; *Broadway*, 694 F.2d at 984.[5] In *Broadway*, we declined to create a *Bivens* remedy for a federal employee against her employer, concluding that allowing

---

[5] Two of these cases—*Broadway* and *Guitart*—presented very similar facts to the case before us now. In both, a former federal employee was afforded no judicial review under the CSRA and brought a constitutional claim in district court. We found that the CSRA's remedy in both cases was exclusive, regardless of its perceived inadequacy.

such a remedy would "encourage aggrieved employees to bypass the statutory and administrative remedies [established under the CSRA] in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established." 694 F.2d at 985 (citation omitted).

*Elgin* did not alter this precedent. In fact, the Court in *Elgin* came to the "conclusion that the statutory review scheme is exclusive, even for employees who bring constitutional challenges to federal statutes." *Elgin*, 132 S. Ct. at 2135. The Court knew that some of these employees (i.e. probationary employees like Gonzalez) were denied any judicial review under the CSRA,[6] yet it still declared that this scheme was "exclusive" with regard to constitutional claims. Moreover, in considering the CSRA, we have previously stated that we are "satisfied that Congress did not neglect expressly to create a judicial remedy where it wanted one to exist." *Broadway*, 694 F.2d at 984; *see also Guitart*, 3 F.3d at *2 (indicating that the exclusion of certain employees from "the realm of the CSRA" is a "policy decision . . . made by Congress, and it would be inconsistent with [a federal court's] place in the constitutional scheme to engraft a nonstatutory remedy onto the comprehensive framework of the CSRA"); *McAuliffe v. Rice*, 966 F.2d 979, 980 (5th Cir. 1992) ("[Judicial review is foreclosed for some under the CSRA] because Congress had determined to establish a comprehensive framework designed to balance the legitimate interest of the various categories of federal employees with the

---

[6] In *Bush* the Court acknowledged that "[n]ot all personnel actions are covered by this system"—"[f]or example, there are no provisions for appeal . . . [for] adverse actions against probationary employees. . . ." 462 U.S. at 385 n.28 (1983). In *Schweiker v. Chilicky* it interpreted *Bush* as standing for the proposition that the CSRA offers "no remedy whatsoever . . . for adverse personnel actions against probationary employees." 487 U.S. 412, 423 (1988).

needs of sound and efficient administration." (internal quotation marks and citation omitted)).

Accordingly, we conclude that the district court did not err in dismissing the claim for lack of subject matter jurisdiction.[7]

## III.

We turn next to the district court's denial of Plaintiff–Appellant's request for a declaratory judgment under 28 U.S.C. § 2201 that Defendant–Appellee's actions violated Plaintiff–Appellant's First Amendment rights. We review the dismissal of a declaratory judgment action for abuse of discretion. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 389 (5th Cir. 2003).

On appeal, Gonzalez argues that the district court erred when it concluded that *Broadway* is controlling in this matter and when it found that the availability of the remedial framework outlined in the CSRA—in particular, the OSC process—weighed in favor of its declining to hear the claim for declaratory relief. He does not challenge the district court's application of the standard derived from *Brillhart v. Excess Insurance Co. of America*, which affords the district court broad discretion in determining whether to hear an action brought pursuant to the Declaratory Judgment Act.[8] 316 U.S. 491, 494–96 (1942). Plaintiff–Appellant also concedes that the district court was correct to apply the factors from *St. Paul Insurance Co. v. Trejo* to the claim for declaratory relief.[9] 39 F.3d 585 (5th Cir. 1994). We have held that "unless the

---

[7] In light of our finding that the district court did not have jurisdiction to consider Gonzalez's *Bivens* claim, we also conclude the district court did not err in denying his motion to stay.

[8] Although in oral argument counsel for Gonzalez mentioned that the district court should have applied the standard from *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–18 (1976), instead of the *Brillhart* standard, the briefs are silent on this point. Thus, we will not consider it here. *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

[9] The seven nonexclusive *Trejo* factors are:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit

district court addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001) (internal quotation marks and citation omitted).

For the reasons stated in Section II, we find *Broadway* is controlling in this case. Furthermore, the district court considered the seven *Trejo* factors on the record and concluded that the first, third, fourth, and sixth weighed heavily in favor of declining to exercise jurisdiction, while the second, fifth, and seventh did not particularly support the discretionary exercise of jurisdiction. In particular, the district court detailed the reasons why it viewed the declaratory judgment suit as interfering with Congress's comprehensive remedial scheme for complaints of this type. Thus, the district court did not abuse its discretion by dismissing the declaratory judgment claim.

**IV.**

Accordingly, we AFFIRM the district court's dismissal of Gonzalez's *Bivens* and declaratory judgment claims, as well as its denial of his motion to stay.

---

filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, . . . 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, . . . [and 7)] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *Trejo*, 39 F.3d at 590–91.