**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 14-51164

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2015

Lyle W. Cayce
Clerk

IRONSHORE SPECIALTY INSURANCE COMPANY,

Plaintiff–Appellant,

v.

TRACTOR SUPPLY COMPANY; TRACTOR SUPPLY COMPANY OF TEXAS, L.P.; SAFETY NATIONAL CASUALTY CORPORATION,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:13-CV-269

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

PER CURIAM:*

This case stems from injuries Kenneth McGowan sustained while working at a distribution center owned by Tractor Supply Company of Texas, L.P. (TSCLP). While McGowan's Texas state-court tort suit against TSCLP was pending, Ironshore Specialty Insurance Company, which provides an umbrella policy for TSCLP, commenced an action under the Declaratory

---

* Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-51164

Judgment Act (DJA) in federal district court against TSCLP and Safety National, which insures TSCLP against bodily injury to Texas employees. Ironshore sought a declaration that Safety National's policy covered TSCLP's liability to McGowan, and that any indemnity owed by Ironshore was in excess of that coverage. After a state court jury found that TSCLP was liable to McGowan for over $8 million in damages, the federal district court dismissed the declaratory judgment action pursuant to its discretion under the DJA. Ironshore appeals that dismissal. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kenneth McGowan, whose workplace injuries occasioned this lawsuit, was hired by Job Link Personnel Services, Incorporated, a staffing company. Job Link assigned McGowan to work at the TSCLP distribution center in Waco, Texas. At the distribution center, a TSCLP employee, Dwight Bledsoe, dropped a pallet onto McGowan, injuring him.

The accident and ensuing litigation implicate numerous insurance policies. Job Link maintained a Texas workers' compensation policy with Texas Mutual Insurance Company. After the accident, McGowan applied for and received benefits under this plan. At the time of the accident, TSCLP had elected not to subscribe to the Texas workers' compensation system and instead created an ERISA work-injury benefit plan. TSCLP also obtained a Nonsubscriber Policy from Safety National containing two coverage provisions, one of which is implicated here.[1]

Under the "Excess Employers' Liability" provision, Safety National must reimburse TSCLP "for all sums in excess of the Self-Insured Retention as specified in . . . the Declarations, which [TSCLP] legally must pay as Bodily

---

[1] The second coverage provision, "Occupational Injury Benefits," reimburses TSCLP for benefits paid to its employees under the ERISA benefits plan.

2

No. 14-51164

Injury Damages to your *Employee(s).*" (emphasis added). "Employee" is defined as:

> (a) a person who is employed in the regular business of, is under the direction and control of, and receives pay by means of a salary, wage or commission directly from, an Employer named . . . as a Named Insured, and for whom an Employer files a Form W-2 with the Internal Revenue Service; or (b) a person determined to be a common law Employee of an Employer by a court of competent jurisdiction . . . . Provided, further, that under no circumstances shall the term Employee include a leased employee, an independent contractor, third-party agent or volunteer.

It is undisputed that Job Link paid McGowan and TSCLP did not file a W-2 with the IRS for him.

TSCLP also held a $25 million Commercial Umbrella Liability Policy from Ironshore. This policy lists, *inter alia*, the Safety National policy as underlying insurance for the "Texas Employer's Liability" policy, which applies to bodily injury "arising out of or in the course of the injured employee's employment by the *Insured* . . . in the State of Texas." Ironshore alleges that its policy covers only costs in excess of the Safety National policy.

McGowan sued Tractor Supply Company, TSCLP, and Bledsoe in Texas state court,[2] alleging, *inter alia*, that TSCLP was negligent and grossly negligent, and that it is vicariously liable for Bledsoe's acts. The parties filed cross-motions for summary judgment. Tractor Supply Company and TSCLP argued that TSCLP was McGowan's statutory employer under the Texas Workers' Compensation Act (TWCA) and that Tractor Supply Company and

---

[2] The parties to the federal action stipulated that McGowan's fifth amended complaint is the operative complaint in the state court action.

3

No. 14-51164

TSCLP "are immune from suit due to the exclusive remedy provisions of the [TWCA]."[3]

McGowan countered with motions for partial summary judgment on the exclusive-remedy defense. He argued that because TSCLP does not maintain workers' compensation insurance, it is not entitled to the protection of the exclusive-remedy provision. McGowan also argued that the exclusive-remedy defense failed because TSCLP was not McGowan's employer under the TWCA. The Texas trial court granted McGowan's motions for partial summary judgment against Tractor Supply Company and TSCLP without explanation.[4]

The Texas case proceeded to trial. On July 14, 2014, a jury found that TSCLP's negligence caused McGowan's injuries and the Texas trial court entered judgment awarding McGowan $8,767,375.81. TSCLP's appeal of this award is currently pending before Texas's Tenth Court of Appeals.

In August 2013, Ironshore filed a federal declaratory judgment action in the Western District of Texas against TSCLP and Safety National.[5] Ironshore sought declarations that (1) McGowan was an "employee" under the Safety National policy and Texas common law; (2) the state court suit is covered by the Safety National policy; (3) any coverage owed by Ironshore is in excess of coverage afforded by the Safety National policy and other primary insurance policies; and (4) Ironshore has no obligation to pay any of the state court judgment until the Safety National and other primary policies are fully

---

[3] S*ee generally* 75 Tex. Jur. 3d *Workers' Compensation* § 139 (2015) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance . . . .").

[4] The court granted leave for the defendants to file an interlocutory appeal. The Tenth Court of Appeals in Waco denied their request for interlocutory appeal.

[5] Ironshore's original and first amended complaints also named Tractor Supply Company as a defendant, but the parties stipulated to Tractor Supply Company's dismissal. Ironshore then filed a second amended complaint that does not name Tractor Supply Company as a party. Tractor Supply Company is a Delaware corporation that serves as the general partner of TSCLP.

No. 14-51164

exhausted. TSCLP brought a cross-claim against Safety National for a declaratory judgment on Safety National's coverage obligations with respect to the McGowan judgment.

Safety National filed a motion to dismiss, which the district court construed as a motion for summary judgment. The parties proceeded to file extensive summary judgment stipulations. Safety National filed a motion for summary judgment subject to its motion to dismiss, arguing the Safety National policy does not cover McGowan's state court claim. Ironshore filed a response and cross-motion for summary judgment.

On September 17, 2014, after the state court entered final judgment for McGowan, the federal district court, pursuant to its discretion under 28 U.S.C. § 2201(a), declined to exercise jurisdiction over the declaratory judgment action and dismissed Ironshore's claims against Safety National and TSCLP. Ironshore filed a motion to reconsider or, in the alterative, amend the judgment to make clear that the complaint was dismissed without prejudice. The district court denied the motion to reconsider, but granted the motion to amend. The court, pursuant to the parties' stipulation, dismissed without prejudice TSCLP's cross-claim against Safety National.

## II. DISCUSSION

A district court considering a declaratory judgment action "must engage in a three-step inquiry." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The "district court must determine: (1) whether the declaratory judgment action is justiciable; (2) whether the court has the authority to grant the declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin–Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003). This Court reviews the dismissal of a declaratory judgment action for abuse of discretion. *Orix*, 212 F.3d at 895.

5

No. 14-51164

At issue in this case are the first and third steps; the district court had authority to decide the suit because "diversity jurisdiction [is] present and the Anti-Injunction Act d[oes] not apply because there was no pending state court action between [the plaintiff] and any of the declaratory judgment defendants," *Sherwin–Williams*, 343 F.3d at 387–88.

Because we conclude that this case is justiciable, we have jurisdiction under 28 U.S.C. § 1291.

## A.    Justiciability (Ripeness)

The first step of the *Orix* inquiry, justiciability, "[t]ypically . . . becomes a question of whether an 'actual controversy' exists between the parties to the action." 212 F.3d at 895. Stated differently, "[a] declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." *Id.* at 896. "[T]he case or controversy requirement of Article III of the United States Constitution is identical to the actual controversy requirement under the Declaratory Judgment Act." *Texas v. W. Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989), *quoted in Orix*, 212 F.3d at 896.

This Court has held that "[t]he threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Orix*, 212 F.3d at 897. Additionally, "[t]he fact that the filing of the lawsuit is contingent upon certain factors does not defeat jurisdiction over a declaratory judgment action." *Id.* "However, in determining whether a justiciable controversy exists, a district court must take into account the likelihood that these contingencies will occur." *Id.*

The Supreme Court has held that an actual case or controversy existed when an insurer brought a declaratory judgment action regarding its liability to the insured for an underlying state court action while the underlying action was still pending. *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 271–74 (1941) ("That the complaint in the instant case presents such a controversy

6

No. 14-51164

is plain."). We have similarly found an actual controversy under the DJA in an insurer's suit seeking a declaration that it was not liable for damages in a pending underlying state court action. *See AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 318–19 (5th Cir. 2006) (per curiam) (finding an actual controversy in a declaratory judgment action on commercial-automobile liability insurance coverage when the underlying state wrongful-death action was still pending).

In light of these cases and the fact that McGowan has already obtained a judgment in the Texas court, the instant case presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *Md. Cas. Co.*, 312 U.S. at 273.

Safety National argues that this case is not justiciable because under *Texas law* indemnity actions are not justiciable until "the underlying suit is concluded." *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004) ("Generally, Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded . . . ." (citing *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997))). The Texas Supreme Court had long held that under the Texas Constitution, "there was no justiciable controversy regarding the insurer's duty to indemnify before a judgment has been rendered against an insured." *Griffin*, 955 S.W.2d at 83. After the Texas Constitution was amended, the Texas Supreme Court recognized an exception to this rule "when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Id.* at 84.

The plain language of *Griffin* forecloses Safety National's argument. *Griffin* emphasized that, generally, "there [is] no justiciable controversy

7

regarding the insurer's duty to indemnify before a *judgment* has been rendered against an insured." 955 S.W.2d at 83 (emphasis added); *see also id.* at 84 ("If . . . coverage issues other than the duty to defend are always nonjusticiable, it would be impossible for an insurer to make a good faith effort to fully resolve coverage before a *judgment* has been rendered in the underlying claim." (emphasis added)); *Collier v. Allstate Cnty. Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.) ("[T]he duty to indemnify only arises after an insured has been adjudicated, whether by *judgment or settlement*, to be legally responsible for damages in a lawsuit." (emphasis added) (citing *Griffin*, 955 S.W.2d at 82–83)). "Judgment" plainly refers to a liability determination at the trial-court level rather than the exhaustion of appellate remedies. Because we conclude that this case is justiciable under *Griffin*,[6] we turn to the third step of the *Orix* inquiry—the district court's discretion. *Sherwin–Williams Co.*, 343 F.3d at 387.

**B.    Discretion**

In *Wilton v. Seven Falls Co.*, the Supreme Court held that the discretionary standard of *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), rather than a more stringent test, governs a district court's decision to hear a declaratory judgment action. 515 U.S. 277, 289–90 (1995). "Under *Brillhart*, a district court 'should ascertain whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in state court.'" *Sherwin–Williams*, 343 F.3d at 389 (alteration in original) (quoting *Brillhart*, 316 U.S. at 494). Although each circuit applies a slightly different formulation of the *Brillhart* test, "each

---

[6] Because Safety National's argument that we lack jurisdiction under *Griffin* fails, we do not address Ironshore's argument that *Griffin* does not affect justiciability under the DJA because it is "merely an application of state prudential justiciability rules," rather than an Article III requirement.

circuit's formulation addresses the same three aspects of the analysis": "the proper allocation of decision-making between state and federal courts"; fairness; and efficiency. *Id.* at 390–91.

This Court uses the nonexclusive factors listed in *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994), to "guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit." *Sherwin–Williams*, 343 F.3d at 390. These factors are:

> "1) whether there is a pending state action in which all of the matters in controversy may be fully litigated,
> 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant,
> 3) whether the plaintiff engaged in forum shopping in bringing the suit,
> 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist,
> 5) whether the federal court is a convenient forum for the parties and witnesses, . . .
> 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy," and . . .
> [7)] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Trejo*, 39 F.3d at 590–91 (citation omitted) (quoting *Travelers Ins. Co. v. La. Farm Bureau Fed'n*, 996 F.2d 774, 778 (5th Cir. 1993)). A district court abuses its discretion "unless the district court addresses and balances the purposes of the [DJA] and the factors relevant to the abstention doctrine *on the record.*" *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001) (emphasis added) (quoting *Trejo*, 39 F.3d at 590).

As an initial matter, we address Ironshore's argument that the district court abused its discretion solely because it "did not expressly consider all seven *Trejo* factors on the record." The district court did list all seven *Trejo* factors. But in its rather brief application of the factors, the district court failed

to mention the seventh factor—whether the district court was being called on to construe a state judicial decree:

> Having reviewed the foregoing [*Trejo* factors] in light of the facts of this case, the Court is persuaded that the balance weighs against exercising jurisdiction in this case. There is a pending state court case which may resolve the issues raised in this case, even though the Plaintiff is not a party to the state court case. The Plaintiff filed this lawsuit in an attempt to foreclose a determination of the issues in the state court case, although the present suit was not filed in anticipation of that lawsuit. Any opinion reached by this Court could contradict a ruling in the state court case, which would create inequities by giving the Plaintiff precedence. Additionally, retaining this lawsuit would not serve judicial economy. In favor of the Plaintiff, there is no indication that Plaintiff was forum shopping or that this Court is an inconvenient forum.

Although this Court has often held a district court abuses its discretion by failing to address the *Trejo* factors, no case has so held when the district court lists all of the factors and expressly applies most of them. *Compare Vulcan*, 238 F.3d at 390 ("Here, as in *Travelers* and *Trejo*, the district court did not attempt to provide even a cursory analysis of the pertinent facts and law." (internal quotation marks omitted)), *with Gonzalez v. Manjarrez*, 558 F. App'x 350, 355 (5th Cir. 2014) (per curiam) (affirming a district court's dismissal because "the district court considered the seven *Trejo* factors on the record and concluded that the first, third, fourth, and sixth weighed heavily in favor of declining to exercise jurisdiction, while the second, fifth, and seventh did not particularly support the discretionary exercise of jurisdiction"). In an unpublished opinion, we confronted a district court order dismissing a declaratory judgment action "because: (1) 'the pending related action brought by [the defendant] appear[ed] . . . to be a nonremovable state court action presenting solely state law issues'; and (2) 'the claims of the parties [could] satisfactorily be adjudicated in the pending relation action; both parties in this

action are parties in the relation action.'" *Am. Bankers Life Assurance Co. of Fla. v. Overton*, 128 F. App'x 399, 402 (5th Cir. 2005) (per curiam) (alteration in original). We found that this "terse analysis considered only the first factor," contrary to precedent, and held the court abused its discretion. *Id.* at 402–03.

Although the district court in this case only specifically discussed six of the seven factors, we conclude that this case is a far cry from *Overton*. The district court listed all seven factors and specifically weighed six of them, albeit tersely. In its analysis, the district court did not mention the seventh factor—"whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending," *Trejo*, 39 F.3d at 591. This is most likely because the district court clearly was not being asked to construe a state judicial decree in this case. Although this factor weighs in favor of Ironshore,[7] it probably would not have changed the district court's conclusion because the court found four factors to weigh against exercising jurisdiction. While the district court's very limited analysis in this case leaves much to be desired, we cannot say that the district court's failure to explicitly discuss the seventh factor constitutes an abuse of discretion. We turn now to the district court's application of each of the seven factors.

### 1. Pending State Court Action

The district court found that this factor weighed against exercising jurisdiction because there was "a pending state court case which may resolve the issues raised in this case." This was apparently a reference to the fact that if the Texas appeals court finds that TSCLP is entitled to the exclusive-remedy defense, "McGowan would take nothing." Citing *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371 (5th Cir. 1998), Ironshore

---

[7] *See infra* Part II(B)(7).

contends that the district court misapplied this factor because "[w]hether Safety National's policy is responsible for the *McGowan* judgment has not been raised by any party to the state lawsuit."

"The first *Trejo* factor, whether there is a pending state action in which all the matters in the controversy may be litigated, requires the court to examine comity and efficiency." *Sherwin–Williams*, 343 F.3d at 391. It is clear that "[a] district court may decline to decide 'a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the *same parties*.'" *Id.* at 392 (emphasis added) (quoting *Brillhart*, 316 U.S. at 495). Although "the lack of a pending parallel state court proceeding" does not *per se* require a district court to decide a declaratory judgment action, "the presence or absence of a parallel state proceeding is an important factor." *Id.* at 394. In *Agora*, this Court recognized that in the context of a district court's DJA discretion, a "parallel state proceeding[ ]" refers to a state court proceeding with "identity of parties or issues." 149 F.3d at 373; *see also AXA*, 162 F. App'x at 320 ("First, because AXA is not a party to the Louisiana action, the court correctly concluded no pending state action exists where all the matters in controversy could be fully litigated.").

Here, the pending state court action does not involve the same parties— Safety National and Ironshore are not parties in that case. Moreover, the state suit does not involve the same legal issues—the scope of Safety National and Ironshore's insurance policies. Safety National argues that, "[c]ontrary to Ironshore's contention, the issue of whether McGowan was an employee of Tractor Supply was . . . presented to and ruled upon by the [s]tate [t]rial [c]ourt." This misses the point. Whether McGowan was an employee as defined by the TWCA is an issue before the state court. At issue in the DJA action is the distinct question of whether McGowan was an employee under the Safety

National policy. Moreover, the Texas trial court did not explain whether it granted summary judgment for McGowan on the TWCA-employee issue or on one of the other issues raised in McGowan's summary judgment motion.

The district court's conclusion that because the Texas appeal might *moot* the issue, there existed a "pending state action in which all the matters in the controversy may be litigated," *Sherwin–Williams*, 343 F.3d at 391, was mistaken. Here, the state court action did not involve the same parties or the same legal issues; thus, this factor weighs "strongly against dismissal," *see id.* at 394.

### 2. Suit Filed in Anticipation of Lawsuit

The district court found that "[t]he Plaintiff filed this lawsuit in an attempt to foreclose determination of the issues in the state court case, although the present suit was not filed in anticipation of that lawsuit."

One of the DJA's purposes "is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires. The mere fact that a declaratory judgment action is brought in anticipation of other suits does not require dismissal . . . ." *Sherwin–Williams*, 343 F.3d at 397 (citation omitted). *Sherwin–Williams* emphasized the similarities between this and the forum-selection factor. *See id.* at 398. Both speak to the fairness aspect of the *Brillhart/Trejo* inquiry—"whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *Id.* at 391. Often, courts find that anticipatory suits weigh in favor of dismissal when the declaratory judgment plaintiff engaged in "procedural fencing." *Id.* at 397 & n.7. For example, this Court has found improper procedural fencing where "the declaratory judgment plaintiff used the federal declaratory judgment statute and the defendant's inability to file an earlier state court suit for the sole purpose of controlling the state law that would

apply." *Id.* at 397 (discussing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 & n.3 (5th Cir. 1983)).

Here there is no indication of procedural fencing. The district court's conclusion that the Plaintiff was attempting "to foreclose a determination of the issues in the state court case" is not supported by the record. As previously discussed,[8] the state-court issues were legally distinct from those raised in the declaratory judgment suit. Ironshore fails to convey how any ruling by the federal court could have foreclosed the Texas court's determination of the applicability of the TWCA exclusive-remedy provision.

The federal suit was filed after the Texas action commenced. And to the extent the federal suit was filed in anticipation of a separate state determination of the scope of the insurance provisions, this is a permissible purpose under the DJA. *Cf. Sherwin–Williams*, 343 F.3d at 398 ("Despite the fact that plaintiff may have predicted that there would be a related suit filed in state court (making the federal suit 'anticipatory'), 'without more we cannot say that [the declaratory judgment plaintiff's] action is an instance of forum-shopping instead of a reasonable assertion of its rights under the declaratory judgment statute and diversity jurisdiction.'" (alteration in original) (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998))).

### 3. Forum Shopping

The district properly court found "no indication that Plaintiff was forum shopping" in this case and concluded that this factor weighs against dismissal. *See Sherwin–Williams*, 343 F.3d at 398 ("[W]e know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage." (internal quotation marks omitted)).

---

[8] *See supra* Part II(B)(1).

No. 14-51164

### *4. Possible Inequities*

The district court found that "[a]ny opinion reached by this Court could contradict a ruling in the state court case, which would create inequities by giving the Plaintiff precedence." Like the two before it, this factor goes to fairness. *See id.* at 391.

Ironshore attacks the district court's finding because "no state suit exists in which the coverage question is at issue. Nor would a determination of the coverage issues foreclose any determination of the liability issues in the state court case." Ironshore correctly observes that McGowan is not a party to the declaratory judgment case, and, therefore could not be bound by any determination made by the federal court. *See, e.g.*, *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535–36 (5th Cir. 1978) ("[Res judicata] treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.' . . . [I]ssue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties."). Safety National points to no other possible inequities created by the exercise of jurisdiction.

Because the only possible inequity identified by the district court or Safety National is not supported by the record, this factor weighs against dismissal.

### *5. Convenience of Forum*

The district court found that there was "no indication" that the Waco district court was an inconvenient forum. Safety National does not dispute this finding, and a review of the record has not revealed any contrary evidence. Thus, the district court properly concluded that this factor also weighs against dismissal.

### *6. Judicial Economy*

The district court observed that in the event the Texas Court of Appeals reverses and grants summary judgment to TSCLP on exclusive-remedy grounds, "a declaratory judgment by this Court would serve no useful purpose," and therefore found that a declaratory judgment would not serve judicial economy.

This factor presents a closer question. The district court is correct in concluding that a finding of no liability for TSCLP in the Texas appeal would moot the declaratory-judgment issue. On the other hand, the parties have already briefed the insurance coverage issues to the district court and entered into extensive factual stipulations. In *Agora*, this Court held that judicial economy weighed against dismissal in part[9] because "there [were] no factual disputes between the parties and . . . they [had] fully briefed the merits of the insurance issues." 149 F.3d at 373. Because the same is true in this case, we hold that this factor weighs against dismissal.

### *7. State Judicial Decree*

The seventh and last factor—"whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending," *Trejo*, 39 F.3d at 591—weighs against dismissal.[10] There is no need to construe a state judicial decree to resolve the issues in this case. *Cf. id.* at 591 n.8 ("For example, here the district court should determine whether it makes more sense for the state court that approved the First Settlement to interpret it.").

---

[9] In *Agora* we also considered the fact that the case "had been pending in federal court for over a year when the district court dismissed it *sua sponte*." 149 F.3d at 373.

[10] As noted previously, the district court did not explicitly address this issue.

Although this Court reviews a dismissal of a declaratory judgment action for abuse of discretion, a deferential standard, *Orix*, 212 F.3d at 895, the district court's cursory analysis of the *Trejo* factors leaves much to be desired. All seven of the *Trejo* factors weigh against dismissal. Thus, we hold that the district court abused its discretion in applying the *Trejo* factors and dismissing the action. *See Sherwin–Williams*, 343 F.3d at 401 (holding that a district court abused its discretion in dismissing a declaratory judgment action because federalism, fairness, and efficiency concerns weighed against dismissal).

## III. CONCLUSION

This case presents an actual controversy for the purposes of the DJA. Moreover, the district court abused its discretion in its application of the *Trejo* factors. For the foregoing reasons, we REVERSE the district court and REMAND for further proceedings.