# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 11, 2022

Lyle W. Cayce
Clerk

No. 21-20093

Koch Project Solutions, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Alliance Process Partners, L.L.C., *doing business as* International Alliance Group; Triten Corporation,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-cv-3479

Before Richman, *Chief Judge,* and Clement and Duncan, *Circuit Judges*.

Per Curiam:*

Koch Product Solutions, L.L.C. (KPS) appeals a stay order in its federal declaratory judgment action. The district court granted the stay

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

largely because of a related pending state court action.  Because the district court did not abuse its discretion, we affirm.

## I

KPS seeks a declaratory judgment that it has not unlawfully drawn employees or business away from Triten Corporation and its subsidiary International Alliance Group (together, Triten).  KPS and Triten both provide project management services to clients in the energy sector.  KPS leadership includes at least five former Triten employees, including KPS President, Paul Switzer.  While working at Triten, each of the employees entered a contract that included noncompete provisions.  The provisions prohibited inducing or attempting to induce employees to leave Triten and work for a competitor, and they prohibited soliciting or accepting similar business from Triten clients for set periods.  Between 2018 and 2019, all five employees left their positions at Triten.

In June 2020, Switzer filed a lawsuit in Texas state court against Triten for breach of contract and various state law torts.  These claims arose out of Triten's alleged failure to pay Switzer compensation and benefits.  Triten responded with counterclaims against Switzer and third-party claims against two of KPS's parent companies, Koch Industries and Koch Engineered Solutions, and against Koch officer David Dotson (collectively, the Koch affiliates).  Among other claims, Triten alleged civil conspiracy and tortious interference with the noncompete provisions.  Triten charged that Switzer and the Koch affiliates sought to draw business away from Triten by establishing KPS and recruiting the former Triten employees.  Triten referred to KPS in its claims, but it did not name KPS as a third-party defendant.  The state district court dismissed the Koch affiliates from the

No. 21-20093

lawsuit for lack of personal jurisdiction, but that decision was reversed on appeal.

In October 2020, KPS filed this federal declaratory judgment action against Triten. KPS brought the lawsuit pursuant to the Declaratory Judgment Act[1] "to remove the cloud over its name" cast by Triten's allegations in state court. The federal action consists of two counts of tortious interference. First, KPS seeks a declaration that it did not interfere with its employees' contract obligations not to solicit or accept business from Triten clients. Second, KPS seeks a declaration that it did not interfere with its employees' contract obligations not to induce or attempt to induce Triten employees to leave Triten and work at a competitor.

Triten sought to dismiss or stay the suit under the Supreme Court's *Brillhart*[2] doctrine, whereby federal courts may exercise their discretion to abstain from hearing declaratory judgment actions.[3] In January 2021, the district court denied the motion to dismiss but granted a stay until final judgment in the state court action. The district court reasoned that, although the state court action involved additional claims and parties, "all of the material questions necessary to decide the issues raised in this declaratory judgment action are governed by state law and can be resolved in the state court action," since the lawsuit arose out of the same facts and involved the same contractual issues. The district court ordered the parties to submit a joint status report every 60 days until the stay is lifted. KPS timely appealed the stay order.

---

[1] 28 U.S.C. § 2201-02.

[2] *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

[3] *Id.* at 495.

No. 21-20093

## II

We must first determine our jurisdiction over this appeal.[4] KPS seeks appellate review pursuant to 28 U.S.C. § 1291. Under § 1291, "federal courts of appeals are empowered to review only 'final decisions of the district courts.'"[5] "[A] decision is ordinarily considered final and appealable under § 1291 only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[6] Most stay orders are not considered final because they do not end litigation; they postpone it.[7]

In abstention and related contexts, however, the Supreme Court has recognized an exception to this general rule.[8] The Court first identified this exception in *Idlewild Bon Voyage Liquor Corp. v. Epstein*.[9] In *Idlewild*, a liquor distributor brought a federal suit challenging the constitutionality of a state statute.[10] The district court stayed the lawsuit under the *Pullman*[11] doctrine, whereby federal courts abstain from deciding constitutional disputes when a state court's clarification of its law would render a constitutional ruling unnecessary.[12] The Supreme Court held that the stay order was a final

---

[4] *United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021) ("We start, as always, with jurisdiction.").

[5] *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1707 (2017) (quoting 28 U.S.C. § 1291)).

[6] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

[7] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983); *Kershaw v. Shalala*, 9 F.3d 11, 14 (5th Cir. 1993).

[8] *Moses H. Cone*, 460 U.S. at 10 n.11.

[9] 370 U.S. 713 (1962).

[10] *Id.* at 714.

[11] *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

[12] *Id.* at 501-02.

decision appealable under § 1291 but gave limited reasoning.[13]  It said only that "[t]he Court of Appeals properly rejected the argument that the order of the District Court 'was not final and hence unappealable under 28 U.S.C. §§ 1291, 1292,' pointing out that '[a]ppellant was effectively out of court.'"[14]

Two decades later, in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,[15] the Court relied on *Idlewild*'s "effectively out of court" exception and held once again that a stay order was appealable under § 1291.[16] *Moses H. Cone* involved a stay entered under the *Colorado River*[17] doctrine, whereby federal courts may in certain exceptional circumstances abstain from exercising jurisdiction when there are concurrent state court proceedings.[18]  *Idlewild* secured appellate jurisdiction over the stay order.[19] In *Idlewild*, the "district court stay pursuant to *Pullman* abstention is entered with the expectation that the federal litigation will resume in the event that the plaintiff does not obtain relief in state court on state-law grounds."[20]  By contrast, in *Moses H. Cone*, "a stay . . . meant that there would be no further litigation in the federal forum; the state court's judgment on the issue would

---

[13] *Idlewild*, 370 U.S. at 715 n.2.

[14] *Id.* (quoting *Idlewild Bon Voyage Liquor Corp. v. Rohan*, 289 F.2d 426, 428 (2d Cir. 1961)).

[15] 460 U.S. 1 (1983).

[16] *Id.* at 10.

[17] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

[18] *Id.* at 817-19.

[19] *Moses H. Cone*, 460 U.S. at 10.

[20] *Id.*

be res judicata."[21]  As a result, "the argument for finality of the District Court's order [was] even clearer."[22]

*Moses H. Cone* emphasized that the "effectively out of court" exception was narrow.  "Of course," the Court explained, "*Idlewild* does not disturb the usual rule that a stay is not ordinarily a final decision for purposes of § 1291, since most stays do not put the plaintiff 'effectively out of court.'"[23]  The exception was "limited to cases where (under *Colorado River*, abstention, or a closely similar doctrine) the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum."[24]

The Court ascertained the stay's object based on its legal consequences.  It was not enough that a stay "have the practical effect of allowing a state court to be the first to rule on a common issue."[25]  Rather, the Court "h[e]ld only that a stay order is final when the sole purpose and effect of the stay is precisely to surrender jurisdiction of a federal suit to a state court."[26]

Since *Moses H. Cone*, the Court has continued to apply this exception.[27]  In *Quackenbush v. Allstate Insurance Co.*,[28] the Court deemed an abstention-based remand order appealable under § 1291 because of its

---

[21] *Id.*

[22] *Id.*

[23] *Id.* at 10 n.11.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 280-81 (1995).

[28] 517 U.S. 706 (1996).

decisions in *Moses H. Cone* and *Idlewild*.[29]  Based on those precedents, the order was appealable as a final decision under § 1291 because it "put[] the litigants in this case effectively out of court, and its effect [was] precisely to surrender jurisdiction of a federal suit to a state court."[30]  The Court acknowledged that "these standards do not reflect our oft-repeated definition of finality."[31]  Nevertheless, the Court concluded that § 1291 appealability was "compelled by precedent."[32]

Precedent also compels § 1291 appealability in this case.  Like stay orders governed by *Pullman* and *Colorado River*, the stay order governed by *Brillhart* here concerns the interplay of federal and state proceedings.[33]  The stay suspends the former in favor of the latter; its object is "precisely to surrender jurisdiction of a federal suit to a state court."[34]  Litigation of the federal suit will not resume, if at all, until final judgment in the state court action.  The district court's stay puts the litigants in this case "effectively out of court."[35]  Under these circumstances, the stay is a § 1291 final decision.

Generally, when this court has deemed *Brillhart* stay orders appealable under § 1291, the stays have suspended federal proceedings until the resolution of a state court lawsuit with res judicata effect.[36]  In those cases,

---

[29] *Id.* at 712.

[30] *Id.* (citing *Moses H. Cone*, 460 U.S. at 10 n.11) (internal citations omitted).

[31] *Id.* at 713.

[32] *Id.*

[33] *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

[34] *Moses H. Cone*, 460 U.S. at 10 n.11.

[35] *Id.*

[36] *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 95 (5th Cir. 1992); *see also Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250 (5th Cir. 2005); *Ford*

No. 21-20093

the stays guaranteed that there would be no further litigation in the federal forum. In this case, the potential for future litigation is less clear. State law determines the preclusive effect of a state court judgment.[37] Under Texas law, res judicata requires: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action."[38] When this court has deemed *Brillhart* stays appealable under § 1291, it has not engaged in a detailed res judicata analysis. That is because res judicata has been self-evident: the parties have been identical, and the claims in the state and federal court actions have overlapped.[39]

Not so here. A final judgment by the state court on the merits of the tortious interference claims may well satisfy elements one and three, but the parties are not identical, and privity is uncertain. This distinction is crucial to the preclusion analysis. Given the fact-specific nature of privity,[40] which

---

*Motor Credit Co. v. Lewis*, 233 F.3d 575, 2000 WL 1468831, at *4 (5th Cir. 2000) (per curiam) (unpublished).

[37] *In re 3 Star Properties, L.L.C.*, 6 F.4th 595, 604-05 (5th Cir. 2021).

[38] *Cox v. Nueces Cnty.*, 839 F.3d 418, 421 (5th Cir. 2016) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

[39] *See Am. Guarantee*, 408 F.3d at 250 (holding that a stay order was appealable under § 1291 when the parties were the same and the state proceeding encompassed common issues); *Granite State*, 986 F.2d at 95 (holding that a stay order was appealable under § 1291 when the parties were the same and the issues would "undoubtedly be litigated in the state court action"); *Ford Motor*, 2000 WL 1468831, at *4 ("Since the state court proceeding will resolve the declaratory judgment action's only issue, the order granting the stay of proceeding is considered a final judgment for purposes of 28 U.S.C. § 1291.").

[40] *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007) (citing and then quoting *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992))

8

No. 21-20093

the parties have not briefed, we decline to rule on privity or to predict the res judicata effect of an unresolved state court proceeding.[41]

In any case, the possibility of future litigation does not preclude our jurisdiction. Our circuit precedents also hold that a stay order that causes a "protracted and indefinite" delay in federal court proceedings suffices to put plaintiffs "effectively out of court."[42] This logic derives from *Idlewild*, in which, as noted, the Supreme Court asserted § 1291 jurisdiction over a stay that was "entered with the expectation that the federal litigation will resume in the event the plaintiff does not obtain relief in state court."[43] In this case, the stay order has already delayed proceedings for over eighteen months, and there is no indication that delay will end. Even if federal litigation does ultimately continue, our jurisdiction is secure.

Triten contends that the district court's order is not final because the order requires the parties to submit periodic status reports. This argument lacks merit. Section 1291 finality "is to be given a practical rather than a technical construction."[44] An order is final when "there is no indication that

---

("Texas courts have been clear that there is no categorical rule for privity; instead the courts look to 'the circumstances of each case.'").

[41] *Cooper v. Harris*, 137 S. Ct. 1455, 1470 n.4 (2017) (determining that there was "no occasion to address" a fact-intensive issue "the parties have not briefed or argued").

[42] *Hines v. D'Artois*, 531 F.2d 726, 731 (5th Cir. 1976) (holding that a stay order that would delay proceedings for at least eighteen months was a final decision under § 1291); *see also Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 810 F.3d 299, 306-08 (5th Cir. 2016) (affirming that *Hines* remains good law and holding that a stay order that had already delayed proceedings for nearly two years was a final decision under § 1291).

[43] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983); *see also Occidental*, 810 F.2d at 306-07; *Hines*, 531 F.2d at 730-31.

[44] *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974)).

the district court intends to revisit its decision to stay the case."[45] Here, there is no such indication. The district court ordered that "this action should be stayed pending final adjudication in the state court action." A mere request for updates on the parties' progress does not evince any interest in lifting the stay before the state court action concludes.

## III

We now turn to the merits of the stay order. Under the Declaratory Judgment Act, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration."[46] They are not compelled to do so, however. In declaratory judgment actions, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."[47] The statute has long "been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."[48]

The *Brillhart* doctrine governs the district court's discretion to stay a declaratory judgment action.[49] Under *Brillhart*, a district court "should ascertain whether the questions in controversy between the parties to the

---

[45] *Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250 (5th Cir. 2005) (citing *Moses H. Cone*, 460 U.S. at 12-13).

[46] 28 U.S.C. § 2201(a).

[47] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

[48] *Id.* at 286.

[49] *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 389 (5th Cir. 2003). Although commonly referred to as *Brillhart* "abstention," the term is "not entirely accurate." *Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 378 (7th Cir. 2010). "Abstention" normally refers to "judicially-created doctrines," whereas the discretion to stay or dismiss an action under the Declaratory Judgment Act comes from the statute itself. *Id.*

No. 21-20093

federal suit . . . can better be settled in the proceeding pending in the state court."[50]

We review the district court's decision to stay federal court proceedings pending the outcome of a state court action for abuse of discretion.[51] Although discretion "is broad, it is not unfettered."[52] A district court abuses its discretion "unless [it] addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant" to the *Brillhart* doctrine.[53]  In *St. Paul Insurance Co. v. Trejo*,[54] we identified seven nonexclusive factors to guide a district court's exercise of discretion in a *Brillhart* stay:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;

---

[50] *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

[51] *Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250 (5th Cir. 2005).

[52] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) (quoting *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 775, 778 (5th Cir. 1993)).

[53] *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001) (quoting *Trejo*, 39 F.3d at 590).

[54] 39 F.3d 585 (5th Cir. 1994).

(6) whether retaining the lawsuit would serve the purposes of judicial economy; and

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[55]

Every circuit has a similar test.[56] Across circuits, the *Brillhart* inquiry is grounded in three fundamental concerns: federalism, fairness, and efficiency.[57]

## A

The first *Trejo* factor considers "whether there is a pending state court action in which all of the matters in controversy may be fully litigated."[58] A parallel state court proceeding raises *Brillhart* concerns about federalism and efficiency.[59] Duplicative litigation in federal court, especially over matters of state law, should be avoided.[60]

The existence of a pending parallel state court proceeding is not dispositive, but it is an "important factor" in the analysis.[61] When a related state court proceeding "is not 'parallel' because it does not involve all the same parties or issues," the district court must consider "the extent of

---

[55] *Id.* at 590-91.

[56] *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390 (5th Cir. 2003) (collecting cases).

[57] *Id.* at 390-91.

[58] *Trejo*, 39 F.3d at 590.

[59] *Sherwin-Williams*, 343 F.3d at 394.

[60] *See id.* at 391-92.

[61] *Id.* at 394.

similarity between the pending state court and federal court cases."[62]  The greater the overlap, the more likely that a stay will promote federalism and efficiency.[63]

The district court ruled that the first factor favored a stay.  The court reasoned that the factual and legal issues coincided because "the state court action arises out of the same facts and circumstances, and involves the same contractual issues as this declaratory judgment action."   The court recognized that KPS was not a party to the state court proceeding but did not deem this distinction significant because KPS had the same interests as Switzer and the Koch affiliates.

The district court correctly determined that the federal and state court proceedings are connected.  Both involve claims of tortious interference based on the same set of noncompete provisions in the same set of contracts.  The related state court proceeding governing state law issues raises concerns about federalism and efficiency that favor a stay.

**B**

The next three *Trejo* factors consider whether the declaratory judgment plaintiff filed suit in anticipation of a lawsuit filed by the defendant, engaged in forum shopping in bringing the action, and would create potential

---

[62] *Id.* at 394 n.5.

[63] *See id.* at 390, 394.

inequities by gaining precedence in time or changing forums.[64]  These factors raise *Brillhart* concerns about fairness.[65]

The district court ruled that, on the whole, these fairness factors favored a stay.  As to the second factor, the court correctly recognized that the federal proceeding was "not filed in anticipation of, but in response to" the state proceeding.  Nevertheless, the court concluded that this response was unfair.  Because "KPS's interests in this declaratory action are the same as the interests of [its] president, Switzer, and [its] parent companies in the state court action," the declaratory action was "in fact, an effort by KPS not only to forum shop, but also to gain precedence by having this court instead of the state court decide the issues raised by the tortious interference claims asserted in both actions."

The district court did not abuse its discretion in concluding that KPS sought to forum shop and to gain unfair precedence.  It is true that a mere preference for a federal forum "does not necessarily demonstrate impermissible forum selection."[66]  An out-of-state plaintiff may properly invoke federal jurisdiction to avoid the potential bias of a state forum.[67]  Protecting out-of-state defendants like KPS is "the traditional justification for diversity jurisdiction."[68]  In this case, however, the record adequately supports the district court's determination that the declaratory action was not a mere effort to avoid state court bias.  The overlap between the state and federal proceedings suggests that KPS intends to reassign adjudication of

---

[64] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).

[65] *Sherwin-Williams*, 343 F.3d at 391.

[66] *Id.* at 399.

[67] *Id.*

[68] *Id.*

shared legal and factual issues to the federal court. KPS says as much in its federal complaint. In KPS's words, "[t]his declaratory judgment action arises from Defendants' public and erroneous allegations that KPS is unlawfully competing with Defendants." KPS seeks declarations of non-interference "so that it may fairly compete in the marketplace without the distraction and harm associated with Defendants' meritless contentions." The purpose of its lawsuit is to have the federal court declare Triten's state court allegations wrong.

This court has previously drawn a connection between the degree of overlap in state court proceedings and procedural inequity.[69] When federal and state court actions are related, the federal action risks "changing forums or subverting the real plaintiff's advantage in state court."[70] These risks dissipate when the federal action pertains to separate claims. In this case, the relationship between the state and federal proceedings threatens impermissible meddling with Triten's lawsuit. This threat supports the district court's conclusion that, in sum, the fairness factors favor a stay.

---

[69] *See Sherwin-Williams*, 343 F.3d at 399 (rejecting unfairness when there was no "race to *res judicata*"); *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167-68 (5th Cir. 2015) (per curiam) (unpublished) (denying procedural inequity when "the state court action did not involve the same parties or the same legal issues," thereby negating the risk of preclusion).

[70] *Sherwin-Williams*, 343 F.3d at 399 (quoting *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 775, 777 (5th Cir. 1993)).

No. 21-20093

## C

The fifth *Trejo* factor considers "whether the federal court is a convenient forum for the parties and witnesses."[71] This factor "primarily address[es] efficiency considerations."[72]

The district court ruled that the federal and state courts were equally convenient, so this factor was neutral. KPS does not dispute the convenience of the federal court, but it argues that this convenience militates in its favor. We are not rigid in prescribing the role that convenience must play in the district court's analysis.[73] The district court did not abuse its discretion in ruling this factor neutral.

## D

The sixth *Trejo* factor considers "whether retaining the lawsuit would serve the purposes of judicial economy."[74] Federal courts "should avoid duplicative or piecemeal litigation where possible."[75] Judicial economy corresponds primarily to *Brillhart*'s concern about efficiency.[76] Judicial economy may also implicate concerns about federalism and comity,

---

[71] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 591 (5th Cir. 1994).

[72] *Sherwin-Williams*, 343 F.3d at 391.

[73] *See, e.g.*, *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 168 (5th Cir. 2015) (per curiam) (unpublished) (holding that this factor "weighs against dismissal" when there was no indication that the federal court was inconvenient); *RLI Ins. Co. v. Wainoco Oil & Gas Co.*, 131 F. App'x 970, 973 (5th Cir. 2005) (per curiam) (unpublished) (finding no abuse of discretion when the federal and state forums were both of "relative convenience" and the district court ruled this factor "neutral").

[74] *Trejo*, 39 F.3d at 591.

[75] *Sherwin-Williams*, 343 F.3d at 391.

[76] *Id.*

especially when duplicative litigation could produce conflicting judgments on matters of state law.[77]

The district court held that this factor favored a stay. The court reasoned that the declaratory judgment action would produce inefficient piecemeal litigation because the state lawsuit involves claims besides tortious interference that the federal lawsuit would not resolve. By contrast, "all issues raised by the claims asserted in this declaratory judgment action can be resolved in the state court proceeding."

The district court correctly concluded that a stay would serve judicial economy. The resolution of the state lawsuit may or may not resolve the claims in the federal lawsuit. As the district court noted, however, there is no question that the federal lawsuit will not resolve the claims in the state lawsuit. For example, the federal lawsuit will not resolve claims by Switzer against Triten for compensation that Triten allegedly failed to pay him. When state court proceedings involve claims or parties beyond those in the federal declaratory judgment action, this court has held that efficiency concerns counsel against asserting jurisdiction.[78] A stay may not avoid piecemeal or duplicative litigation, but proceeding with the federal action ensures it.

The federal action also raises concerns about federalism. Duplicative litigation in the federal court about state law matters—tortious interference

---

[77] *Id.*

[78] *See id.* ("A federal court should be less inclined to hear a case if necessary parties are missing from the federal forum, because that leads to piecemeal litigation and duplication of effort in state and federal courts."); *Am. Emps.' Ins. Co. v. Eagle Inc.*, 122 F. App'x 700, 703-04 (5th Cir. 2004) (per curiam) (unpublished) (affirming a stay order when "a federal court cannot rule conclusively" on all the issues raised in the state court proceedings so "it would not be more efficient for a federal court to initially hear the claims").

with Triten's contracts—creates "the potential for inconsistent state and federal court judgments."[79]   A stay reduces this risk.   For reasons of efficiency as well as federalism, this factor favors a stay.

## E

The seventh *Trejo* factor considers "whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending."[80]   This factor addresses *Brillhart*'s concern about federalism.[81]

Because this case does not involve the construction of a state judicial decree, the district court deemed this factor "not relevant."   KPS contends that the absence of a state decree is not irrelevant but rather disfavors a stay. This court has not dictated the weight that district courts must place on the absence of a state decree.   One decision held that it "weighs strongly" in favor of the declaratory judgment plaintiff,[82] while another approved of the district court's determination that this factor was "not implicated."[83]   KPS does not give any reason why the absence of a state judicial decree warrants special significance in this case.   In fact, KPS concedes that there is "no meaningful dispute" on this point.   Given the variation in acceptable

---

[79] *Sherwin-Williams*, 343 F.3d at 391.

[80] *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 591 (5th Cir. 1994).

[81] *Sherwin-Williams*, 343 F.3d at 392.

[82] *AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 321 (5th Cir. 2006) (per curiam) (unpublished).

[83] *RLI Ins. Co. v. Wainoco Oil & Gas Co.*, 131 F. App'x 970, 973 (5th Cir. 2005) (per curiam) (unpublished).

interpretations, the district court did not abuse its discretion in rejecting the relevance of this factor.

## F

The seven *Trejo* factors are "nonexclusive."[84] KPS asserts additional concerns about unfairness that would result if the state court action were to preclude the federal court action. As explained above, however, the preclusive effect of the state court's ruling is unknown. This unsubstantiated fear does not bear on the analysis.

In addition to considering the *Trejo* factors, a district court must also "address[] and balance[] the purposes of the Declaratory Judgment Act."[85] KPS argues that the stay order defies the purposes of the statute by obstructing KPS's attempt to clarify its rights. It is true that "[a] proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued."[86] However, the district court reasonably concluded that a stay was consistent with that purpose. Triten had already sought to resolve the dispute in some measure by asserting related claims in state court.

In sum, we conclude that the district court did not abuse its discretion in granting the stay. The presence of a related pending action in state court implicates *Brillhart*'s concerns about federalism, fairness, and efficiency that support the district court's stay decision.

---

[84] *Sherwin-Williams*, 343 F.3d at 388.

[85] *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001) (quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994)).

[86] *Sherwin-Williams*, 343 F.3d at 397.

No. 21-20093

## IV

Finally, we turn to the parties' motions for judicial notice. Both concern documents from the related state court proceedings.

Under Federal Rule of Evidence 201, a court "may judicially notice a fact that is not subject to reasonable dispute."[87] Such facts include those that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[88] An appellate court may take judicial notice of facts, "even if such facts were not noticed by the trial court."[89] On several occasions, this court has taken judicial notice of court proceedings relevant to the case being decided.[90]

We grant both motions. The state court proceedings are relevant to this action because they elucidate the nature of the claims the parties have made and the defenses they have raised, and they show the status of those proceedings. Of course, our notice of these documents does not mean that we accept the assertions in the state court pleadings as true. Rule 201 permits judicial notice only of facts that are "not subject to reasonable dispute."[91] The test for indisputability is stringent. Assertions in pleadings that are not otherwise obvious cannot clear Rule 201's "'indisputability' hurdle."[92]

---

[87] Fed. R. Evid. 201(b).

[88] *Id.* 201(b)(2).

[89] *United States v. Herrera-Ochoa*, 245 F.3d 495, 501 (5th Cir. 2001); *see also* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.").

[90] *See, e.g.*, *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 n.8 (5th Cir. 2017); *United States v. Verlinsky*, 459 F.2d 1085, 1089 (5th Cir. 1972); *Paul v. Dade Cnty.*, 419 F.2d 10, 12 (5th Cir. 1969).

[91] Fed. R. Evid. 201(b).

[92] *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998).

No. 21-20093

\*     \*     \*

For the reasons stated, we AFFIRM the district court's stay order and GRANT the parties' motions for judicial notice.